Eric Silvestri (*pro hac vice* forthcoming)
silvest@chapman.com
Amanda Mehr (CA Atty No. 341624)
mehr@chapman.com
**CHAPMAN AND CUTLER LLP**
320 South Canal Street
Chicago, Illinois 60606
(312) 845-3000

Attys for Plaintiffs BEYOND FINANCE, LLC
and CONSUMER FINANCIAL SERVICES
SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND FINANCE, LLC and CONSUMER FINANCIAL SERVICES SOLUTIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FIDELITY DEBT RELIEF, LLC and WADE KIRK, <br><br> Defendants. | Case No. 8:22-cv-1098 <br><br> **PLAINTIFF BEYOND FINANCE, LLC and CONSUMER FINANCIAL SERVICES SOLUTIONS, INC.'S COMPLAINT FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF** |

NOW COME Plaintiffs BEYOND FINANCE, LLC (*"Beyond Finance"*) and CONSUMER FINANCIAL SERVICES SOLUTIONS, INC. (*"CFSS"* and together with BEYOND FINANCE, the *"Plaintiffs"*), by counsel, against

FIDELITY Debt Relief, LLC (*"Fidelity"*) and Wade Kirk (*"Mr. Kirk"* and together with FIDELITY, the *"Defendants"*) and respectfully allege as follows:

## INTRODUCTION AND STATEMENT OF THE CASE

This lawsuit is a straightforward breach of contract action. CFSS and its subsidiary BEYOND FINANCE entered into mutually beneficial contracts under which FIDELITY was to provide marketing services exclusively to BEYOND FINANCE, and CFSS would issue a loan to FIDELITY to maintain and expand its business. However, FIDELITY abruptly stopped performing, breaching those agreements, and defaulting on its loan.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2. This Court has personal jurisdiction over the Defendants because they are located in this District, conduct substantial commercial activity in this District, and maintain offices in this District.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendants are located in this District and the events giving rise to this action occurred in this District.

## PARTIES

4. Plaintiff BEYOND FINANCE is a California limited liability company. The sole member of BEYOND FINANCE is CFSS, which, as described below, is a Delaware corporation with its principal place of business in New York.

5. Plaintiff CFSS is a Delaware corporation with its principal place of business at 400 Madison Avenue 21st Floor, New York, New York 10017. CFSS

is a holding company whose primary purpose is to hold ownership interests in various entities as part of a consumer finance-focused enterprise consisting of BEYOND FINANCE and other subsidiaries and affiliates.

6. Defendant FIDELITY is, upon information and belief, a Delaware limited liability company. The sole member of FIDELITY is, upon information and belief, Mr. Kirk.

7. Mr. Kirk is an individual, who is, upon information and belief, a resident of Orange County, California.

## BACKGROUND AND RELEVANT FACTS

**I. DEFENDANTS' BUSINESS RELATIONSHIP WITH PLAINTIFFS**

8. BEYOND FINANCE is a debt settlement company, meaning its customers engage BEYOND FINANCE to negotiate and settle their unsecured debts on their behalf.

9. Debt settlement companies, including BEYOND FINANCE, identify and solicit consumers by partnering with marketing companies, such as FIDELITY.

10. Under these types of arrangements, marketing companies solicit and initiate contact with a consumer and receive a commission for directing consumers to, or enrolling them with, BEYOND FINANCE in its debt settlement programs.

**A. FIDELITY ENTERS INTO AN EXCLUSIVE MARKETING AGREEMENT WITH BEYOND FINANCE**

11. On or about June 25, 2021, FIDELITY and BEYOND FINANCE entered into a Debt Settlement Marketing, Enrollment, and Origination Agreement (as amended from time to time, the *"Marketing Agreement"*). A true and correct copy of the Marketing Agreement is attached hereto as Exhibit A.

12. On or about September 24, 2021, FIDELITY and BEYOND FINANCE executed a First Amendment to the Marketing Agreement (the *"Amendment"*). A true and correct copy of the Amendment is included in Exhibit A.

13. The Amendment, among other things, reflected an agreement that FIDELITY would exclusively devote its marketing business to enrolling customers with BEYOND FINANCE.

14. Specifically, the Marketing Agreement, as modified by the Amendment, stated that:

> (a) Exclusivity; Exclusivity Period. For a period of four years that shall expire on November 30, 2025, [FIDELITY] acknowledges and agrees that [FIDELITY], including any affiliate or other person or entity with common ownership and control, shall only offer, market, sell, origination and administer debt settlement programs on behalf of, or for the benefit of, [BEYOND FINANCE] or its affiliates and assigns. After the expiration of this exclusivity period, [FIDELITY] may offer, market, sell, origination and administer debt settlement programs on its own behalf and on behalf of third parties.
>
> (b) Damages. [BEYOND FINANCE] and [FIDELITY] both acknowledge and agree that [FIDELITY]'s failure to comply with Section 6.3(a) of this Agreement relating to exclusivity will cause [BEYOND FINANCE] to incur substantial economic damages and losses, including actual damages, lost profits and consequential damages related to the loss of business associated

with the loss of debt settlement programs. [FIDELITY] acknowledges and agrees that, upon a breach of Section 6.3(a), it shall be liable for any and all losses, costs, damages, and expenses (including, without limitation, reasonable attorneys' and experts' fees) directly or indirectly related to [FIDELITY]'s breach of Section 6.3(a). The Parties also acknowledge and agree that for the purposes of calculating the monthly lost profits associated with a breach of Section 6.3(a), the lost monthly revenue shall be calculated using an average of six months of revenue preceding the breach.

15. Under the terms of the Marketing Agreement, FIDELITY's exclusivity period lasted four years, and would not expire until November 30, 2025. *See* Ex. A at Section 6.3(a).

16. Accordingly, as of the time of filing, FIDELITY's exclusivity obligation is still in effect under the terms of the Marketing Agreement.

17. In the event that it breached its exclusivity obligation, FIDELITY agreed to be liable for "any and all losses, costs, damages, and expenses (including, without limitation, reasonable attorneys' and experts' fees) directly or indirectly related to [its] breach." *See* Ex. A at Section 6.3(b).

### B. FIDELITY EXECUTES A LOAN AGREEMENT WITH CFSS

18. On or about November 5, 2021, FIDELITY and CFSS entered into a Business Loan Agreement (the *"Loan Agreement"*). A true and correct copy of the Loan Agreement is attached hereto as Exhibit B.

19. In Section 4 of the Loan Agreement, FIDELITY acknowledged and agreed to "use the proceeds from the advance of the principal amount solely for

general corporate purposes for the operation of borrower's business related to the [Marketing Agreement]." *See* Ex. B at Section 4.

20. The Loan Agreement contains covenants by FIDELITY related to the Marketing Agreement including (1) a covenant to remain in compliance with the terms of the Marketing Agreement, and (2) a covenant to provide BEYOND FINANCE with 100% of the consumers that seek referral to a debt settlement company, reaffirming the exclusivity obligation in the Marketing Agreement. *See* Ex. B at Section 7.10.

21. The Loan Agreement and the Marketing Agreement were intertwined further by virtue of a cross-default clause.

22. Specifically, under Section 9.3 of the Loan Agreement a default of the Marketing Agreement constitutes a default under the Loan Agreement.

23. Under this structure, if FIDELITY ever ceased honoring its obligations to BEYOND FINANCE, then CFSS would be permitted to call the loan in default and collect what was owed.

24. The Loan Agreement established clear expectations for volume of consumers BEYOND FINANCE would receive from FIDELITY's marketing efforts by adding assumptions regarding the amount of business BEYOND FINANCE received from FIDELITY to the disbursement of funds under the loan agreement.

25. Under the terms of the Loan Agreement, disbursements were to be made under the assumption that FIDELITY would produce a minimum of $1 million in "cleared draft volume" in December 2021 and subsequently produce $2.5 million in "cleared draft volume" and 80% first draft rate prior to the additional disbursements. *See* Ex. B at Section 2.2(a).

26. In this way, FIDELITY's exclusivity obligation to BEYOND FINANCE is inexorably tied up with its credit obligations to CFSS.

27. After executing the Loan Agreement, CFSS extended to FIDELITY a $550,000 loan. *See* Ex. B at Section 2.2(a).

28. In exchange, FIDELITY unconditionally promised to pay CFSS the amounts under the terms and conditions set forth in the Loan Agreement.

29. Specifically, FIDELITY promised:

> (c) Promise to Pay. FOR VALUE RECEIVED, [FIDELITY] hereby unconditionally promises to pay to the order of [CFSS], at such place or to such bank accounts as may be designated in writing by [CFSS] from time to time, in lawful money of the United States of America, the principal sum equal to the Principal Amount and all other amounts that become due and payable to [CFSS] pursuant to this Agreement, at the times, in the amounts and on the terms and conditions, set forth in this Agreement. The obligation of [FIDELITY] to make payment hereunder is absolute and unconditional and shall not be subject to diminution or delay by set off, counterclaim, abatement or otherwise.

*See* Ex. B at Section 2.1.

### C. MR. KIRK EXECUTES A PERSONAL GUARANTY OF THE LOAN AGREEMENT

30. As further security backing FIDELITY's obligations, on November 5, 2021, Mr. Kirk, who, upon information and belief, owns or controls FIDELITY, executed a Personal Guaranty (the *"Guaranty"*) guaranteeing the

"Liabilities" of FIDELITY. A true and correct copy of the Guaranty is attached hereto as Exhibit C.

31. "Liabilities" is defined under the Guaranty as "all liabilities of [FIDELITY] to [CFSS] of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by the [CFSS] by assignment or otherwise, whether matured or unmatured and whether absolute of contingent, including, but not limited to, the [Loan Agreement]." See Ex. C at p. 1.

32. Mr. Kirk guaranteed the Liabilities "without notice or demand." See Ex. C at p. 1.

33. Mr. Kirk further agreed to waive "(a) notice of acceptance of this Guaranty and of extensions of credit by [CFSS] to [FIDELITY]; (b) presentment and demand for payment of any of the Liabilities of the [FIDELITY]; (c) protest and notice of dishonor or default to the undersigned or to any other party with respect to any of the Liabilities of the [FIDELITY]; (d) all other notices to which the undersigned might otherwise be entitled; and (e) any demand for payment under this Guaranty." See Ex. C at p. 1

## II. FIDELITY ABRUPTLY STOPS HONORING ITS EXCLUSIVITY OBLIGATIONS

34. Following the execution of the Marketing Agreement and Loan Agreement, FIDELITY began marketing and enrolling customers with BEYOND FINANCE.

35. Then, in March 2022, FIDELITY stopped enrolling customers with BEYOND FINANCE.

36. In fact, in March 2022, FIDELITY did not enroll any consumers in BEYOND FINANCE's programs and has not enrolled a single customer since.

8

PLAINTIFFS BEYOND FINANCE, LLC AND CONSUMER FINANCIAL SOLUTIONS, INC.'S
COMPLAINT FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF

37. The last enrollment FIDELITY generated on behalf of BEYOND FINANCE was on February 28, 2022.

38. Upon information and belief, FIDELITY has not ceased business operations.

39. Rather, upon information and belief, FIDELITY enrolled customers and engaged in marketing activity on behalf of itself or BEYOND FINANCE's competitors beginning no later than February 28, 2022.

40. By sending leads to other direct competitors instead of BEYOND FINANCE, FIDELITY's conduct is a significant and material breach of the Marketing Agreement, specifically the exclusivity clause.

41. Upon information and belief, FIDELITY breached the Marketing Agreement (and thereby the Loan Agreement) by directing its solicitation and marketing efforts to enrolling customers with BEYOND FINANCE's competitors, J.W. Financial Solutions and Alleviate Financial Solutions.

42. Upon information and belief, FIDELITY has originated $3 million of debt enrollment per month since signing the Marketing Agreement, the majority of which has not been enrolled with BEYOND FINANCE.

43. The prospect of losing marketing leads to direct competitors is precisely why BEYOND FINANCE bargained for the exclusivity provisions in the Amendment.

44. On April 22, 2022, Plaintiffs sent a Reservation of Rights and Default Letter to FIDELITY outlining and declaring the Events of Default under the Loan Agreement and Marketing Agreement. A true and correct copy of this Reservation of Rights and Default Letter (the *"Default Letter"*) is attached hereto as Exhibit D.

45. Plaintiffs received no response.

46. On May 10, 2022, Plaintiffs sent a Notice of Default and Acceleration Notice (the *"Acceleration Notice"*) to FIDELITY reiterating the Events of Default and providing notice that all "Obligations" owed had been accelerated and were due immediately.

47. "Obligations" is defined in the Loan Agreement as:

> (d) all debts, liabilities and obligations of Borrower to Lender … of every kind and description, direct or indirect, absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising, related to this [Loan Agreement], including, without limitation, (a) the full and prompt payment of all amounts owed by Borrower under this Agreement when due; (b) the timely and complete performance of all agreements, covenants, indemnities; terms, conditions and other obligations to be performed by, or on behalf of Borrower under this Agreement; the payment of any and all additional sums advanced by Lender for taxes, assessments or insurance premiums or for the performance of any of Borrower's covenants and obligations under this Agreement or for any other purpose; and (d) the payment of any and all Collection Costs"

See Ex. B at Section 1.10. A true and correct copy of the Acceleration Notice is attached hereto as Exhibit E.

48. FIDELITY has not repaid the loan, as demanded in the Acceleration Notice, and, upon information and belief, continues to breach its exclusivity obligations to BEYOND FINANCE.

10

PLAINTIFFS BEYOND FINANCE, LLC AND CONSUMER FINANCIAL SOLUTIONS, INC.'S
COMPLAINT FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF

# COUNT I

## (TEMPORARY INJUNCTION AGAINST FIDELITY)

49. Plaintiffs incorporate all previous paragraphs by reference as if set forth in full herein.

50. BEYOND FINANCE is likely to succeed on the merits of its claims regarding FIDELITY'S breach of the Marketing Agreement.

51. BEYOND FINANCE has suffered irreparable injury by virtue of FIDELITY'S violations of FIDELITY'S exclusivity obligations in the Marketing Agreement.

52. BEYOND FINANCE will continue to suffer irreparable injury if FIDELITY is not judicially enjoined from making further marketing and solicitation efforts to BEYOND FINANCE'S competitors.

53. FIDELITY agreed that a violation of the exclusivity agreement may cause irreparable injury for which BEYOND FINANCE would be entitled to immediate and comprehensive equitable relief. *See* Ex. A § 14.

54. FIDELITY explicitly consented to "the issuance of temporary injunctive relief to compel performance by FIDELITY . . . of [its] respective obligations." *Id*.

55. FIDELITY has already acknowledged and agreed that a violation of the exclusivity agreement is irreparable injury for which BEYOND FINANCE would be entitled to immediate and comprehensive equitable relief.

56. A balance of equitable interests favors the granting of a temporary injunction against FIDELITY to honor its exclusivity obligations through the natural expiration of the exclusivity period, *i.e.*, November 30, 2025.

57. A temporary injunction is in the public interest as it benefits the public for exclusivity obligations and other contracts to be enforced.

## COUNT II

### (BREACH OF CONTRACT–LOAN AGREEMENT)

58. Plaintiffs incorporate all previous paragraphs by reference as if set forth in full herein.

59. CFSS has performed all of its obligations under the Loan Agreement.

60. FIDELITY has breached the Loan Agreement by virtue of, among other things, failure to provide BEYOND FINANCE with 100% of the aggregate volume of all debts for any consumers that seek referral to a debt settlement company through FIDELITY's marketing efforts beginning no later than February 28, 2022, as required by Section 7.10(b) of the Loan Agreement.

61. Currently no less than $150,000 is due and owing under the Loan Agreement.

WHEREFORE, CFSS respectfully prays for entry of judgment against FIDELITY in an amount no less than $150,000, plus all past, current, and further accruing interest, default interest, attorneys' fees, and costs.

## COUNT III

### (BREACH OF CONTRACT–MARKETING AGREEMENT)

62. Plaintiffs incorporate all previous paragraphs by reference as if set forth in full herein.

63. BEYOND FINANCE has performed all of its obligations under the Marketing Agreement.

64. FIDELITY has breached the Marketing Agreement by virtue of, among other things, failure to provide BEYOND FINANCE with 100% of the

aggregate volume of all debts for any consumers that seek referral to a debt settlement company through FIDELITY's marketing efforts as required by Section 2.1 of the Marketing Agreement beginning no later than February 28, 2022. Additionally, Section 9.3 of the Loan Agreement articulates that any default under the loan agreement constitutes an event of default under the Marketing Agreement. *See* Ex. B.

WHEREFORE, BEYOND FINANCE respectfully pray for entry of judgment against FIDELITY in an amount to be proven at trial, but which is no less than $75,000 and includes actual damages, lost profits, and consequential damages including losses, costs, damages, and expenses including, without limitation, reasonable attorneys' and experts' fees and costs.

## COUNT IV

## (BREACH OF CONTRACT–GUARANTY)

65. Plaintiffs incorporate all previous paragraphs by reference as if set forth in full herein.

66. CFSS has performed all of its obligations under the Loan Agreement.

67. FIDELITY has breached the Loan Agreement by virtue of, among other things, failure to provide BEYOND FINANCE with 100% of the aggregate volume of all debts for any consumers that seek referral to a debt settlement company through FIDELITY's marketing efforts beginning no later than February 28, 2022, as required by Section 7.10(b) of the Loan Agreement.

68. Mr. Kirk has breached the Guaranty by, among other things, failure to repay obligations under the Guaranty when due.

69. Currently $150,000 is due and owing under the Loan Agreement.

13

PLAINTIFFS BEYOND FINANCE, LLC AND CONSUMER FINANCIAL SOLUTIONS, INC.'S
COMPLAINT FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF

WHEREFORE, CFSS respectfully prays for entry of judgment against Mr. Kirk in an amount no less than $150,000 plus all past, current, and further accruing interest, default interest, attorneys' fees, and costs.

DATED: June 2, 2022
          Chicago, Illinois

      Respectfully submitted,

**CHAPMAN AND CUTLER LLP**

\_\_\_\_\_/s/ Amanda Mehr_____
By: Amanda Mehr

Attorneys for Plaintiffs BEYOND FINANCE, LLC and CONSUMER FINANCIAL SERVICES SOLUTIONS, INC.